No. 28,402.

THE STATE OF KANSAS, *Appellee*, v. FRED LENTZ, *Appellant*.

(277 Pac. 794.)

Opinion filed June 8, 1929.

*F. Dumont Smith, Eustace Smith* and *Arthur T. Symns,* all of Hutchinson, for the appellant.

*William A. Smith,* attorney-general, *R. O. Mason,* assistant attorney-general, *Everett Baker,* county attorney, and *N. E. Quinlan,* of Lyons, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Fred Lentz was charged jointly with Emma Nesbit in an information containing two counts: first, of breaking into and entering a store building in the nighttime, in the city of Lyons, belonging to George Lantz & Co.; second, in taking, stealing and carrying away therefrom seventy-five suits of men's clothing. Lentz was convicted of both burglary and larceny, and from the judgment rendered the defendant appeals, and assigns as error the admission of certain testimony and the giving of a certain instruction.

There was testimony as to the breaking into the store and that the clothing kept there had been taken out, and that the suits of clothing so taken had been kept and hung upon an unusual type of hanger. R. H. Middlekauff, a member of the firm of George Lantz & Co., testified that the clothes were kept upon the hangers of the

unusual type mentioned; that such hangers were not generally used in the community and were only handled by one other store in the city. A witness, Mrs. Owens, who was in defendant's home shortly after the breaking and the larceny, testified that she saw hangers of the type stolen in a closet of defendant's home. She also testified that shortly after the burglary she heard a conversation between the defendant and his wife, in which the wife asked defendant what he and Emma Nesbit had done with the clothes taken from the store, and he replied that they had taken them to Kansas City and traded them for sixty gallons of alcohol. She chided him with running around with Emma Nesbit, saying, "she wished he would not fool around with Emma Nesbit for fear she would get him in the penitentiary." Defendant replied, witness said, that "he was not afraid, that he only went along with her." He also said in the conversation that he had an awful time trying to get the alcohol in Kansas City. The witness further says that defendant and his wife quarreled about his association with Emma Nesbit, and that the quarrel reached the stage where the defendant slapped his wife, and that he kept on slapping her when she told him "she knew enough to send him to the pen. She knew all about the robbery at Lyons, and if he didn't quit she would call the law, and I told him if he didn't quit I would call Brown [the sheriff], and he asked me not to tell, and I told him I would not."

Defendant objected to the reception of the evidence of Middlekauff as to the type of hangers with their unusual characteristics and which another witness had said she found in defendant's home. Hangers of that kind had been taken with the clothing stolen. It is argued that many such hangers were manufactured and sold throughout the country, and that the finding of some of that kind in defendant's possession did not constitute competent proof that they had been stolen from the store by the defendant. The type of hangers being unusual and not in common use in the community, the finding of such hangers in defendant's possession tended in a degree to connect defendant with the offense. Although not strong, the evidence cannot be regarded as being destitute of probative value. It was not improper to admit the evidence and leave to the jury the determination of the weight to which it was entitled when considered in connection with the other evidence in the case touching the identity of the things charged to have been stolen by the defendant.

Complaint is made that the following instruction was given to the jury:

"The state has introduced evidence tending to prove that the defendant shortly after the alleged burglary and larceny had possession of the property claimed to be stolen, and in this connection I instruct you that the possession of stolen property recently after it is stolen is *prima facie* evidence of guilt, and throws upon the possessor the burden of explaining the possession, and, if unexplained, may be sufficient of itself to warrant a conviction, and it is for the jury to say from all the facts and circumstances proven upon the trial whether or not the defendant did have possession of the property stolen, if you find it was so stolen, considering all the circumstances of the case as shown by the evidence."

It is conceded that the one given is the ordinary and proper instruction where a defendant is shown to have been in recent possession of stolen property, but it is argued that the instruction had no place in this case because of a lack of competent evidence that the property was ever in defendant's possession. He insists that the evidence that the hangers mentioned were found in his house was so remote as to be insufficient as a ground for instructing the jury on the question of recent possession. The circumstance of the hangers being found in defendant's house, although not a conclusive or strong one, was not the only evidence as to the possession by defendant of the property stolen. In addition there was the evidence that in a discussion with his wife, had within the hearing of a witness, the defendant admitted that he and Emma Nesbit had taken the clothing to Kansas City and there traded it for sixty gallons of alcohol. This statement was expressly denied by defendant, and it is argued that the testimony of Mrs. Owens was weird and incredible, but the court could not ignore the testimony produced. It was the duty of the court to instruct the jury on the basis of the evidence admitted in the case and leave to the jury to determine the credibility of witnesses and the truth of their testimony. On the whole we think the evidence justified the instruction given.

No error being found in the record, the judgment is affirmed.